# SHAWMUT MORTGAGE COMPANY *v.* MARY C. WHEAT ET AL.
## (SC 15812)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

Argued May 28—officially released August 4, 1998

*Allan F. Friedman,* for the appellant (named defendant).

*David L. Gussak,* with whom was *Claudia Sklar,* for the appellee (substitute plaintiff Ocwen Federal Bank FSB).

*Opinion*

KATZ, J. This appeal arises out of an attempt by the substitute plaintiff, Ocwen Federal Bank FSB (plaintiff),[1] to foreclose on a residential mortgage deed conveyed to its predecessor by the named defendant, Mary C. Wheat (defendant).[2] The sole issue to be decided on appeal is whether the defendant is an "unemployed person" as defined by the Homeowner Protection Act (mortgage act); General Statutes §§ 49-31d through 49-31i;[3] who may qualify for protection from mortgage

[1] Connecticut National Mortgage Company, the original mortgagee, subsequently became Shawmut Mortgage Company, which initiated the foreclosure action and subsequently assigned the mortgage to Shawmut Bank Connecticut, N.A. Shawmut Bank Connecticut, N.A., subsequently assigned the mortgage to Berkeley Federal Bank and Trust FSB, which then was substituted as the plaintiff. Berkeley Federal Bank and Trust FSB has since changed its name to Ocwen Federal Bank FSB, which has been substituted as the plaintiff.

[2] Clayton E. Wheat, a codefendant in this foreclosure action, is not involved in this appeal.

[3] General Statutes § 49-31d provides in relevant part: "(1) 'Unemployed person' means a person who is unemployed for purposes of chapter 567. . . .

"(4) 'Protection from foreclosure' means a court-ordered restructuring of a mortgage debt designed to eliminate an arrearage in payments on such debt and to provide a period not to exceed six months during which foreclosure is stayed. . . .

"(6) 'Underemployed person' means a person whose earned income during the twelve-month period immediately preceding the commencement of the foreclosure action is (A) less than fifty thousand dollars and (B) less than seventy-five percent of his average annual earned income during the two years immediately preceding such twelve-month period."

foreclosure under that act. The trial court denied the defendant's application for protection, determining that, as a matter of law, she was not an "unemployed person" for whom protection was available. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following facts are not in dispute. On July 21, 1989, the defendant and her husband, Clayton E. Wheat, executed a promissory note in the principal amount of $750,000 to Connecticut National Mortgage Company. (Connecticut Mortgage). As security for the note, the defendant, as the sole owner of residential real estate located at 22–24 Searles Road in Darien, executed a mortgage deed conveying that property to Connecticut Mortgage. On December 21, 1992, Shawmut Mortgage Company, a predecessor in interest to the plaintiff, instituted an action to foreclose upon the defendant's mortgage based upon nonpayment of the principal and interest due under the note.

General Statutes § 49-31f provides in relevant part: "(a) . . . [A] homeowner who is underemployed or unemployed against whom a foreclosure action is brought may make application, together with a financial affidavit, to the court having jurisdiction over the foreclosure action for protection from foreclosure . . . .

"(c) The court shall determine the eligibility of such homeowner for protection from foreclosure . . . .

"(d) In determining the eligibility of a homeowner for protection from foreclosure . . . the court . . . shall consider:

"(1) The likelihood that the homeowner will be able to make timely payments on the restructured mortgage commencing at the end of the restructuring period.

"(2) The presence of any substantial prejudice to the lender or any subordinate lienor or encumbrancer which would result from a restructuring of the mortgage debt. . . .

"(f) If the court approves the application for protection from foreclosure and restructures the mortgage debt, the foreclosure action shall be stayed for the restructuring period. . . ."

Thereafter, on January 27, 1993, pursuant to the mortgage act, the defendant filed an application in the trial court seeking protection against foreclosure. In general, the mortgage act grants underemployed and unemployed homeowners a six month stay in foreclosure proceedings on their principal residences.[4] In seeking protection against foreclosure, the defendant claimed that, as an elderly person suffering from an illness that makes it impossible for her to work, she qualified as an "unemployed person" within the meaning of the mortgage act. On July 23, 1993, the trial court denied the defendant's application for protection from foreclosure, concluding, as a matter of law, that she was not an "unemployed person" within the meaning of the mortgage act. Specifically, the trial court construed the term "unemployed person" as used in the mortgage act as requiring a previous employer-employee relationship. The defendant did not claim to have ever been employed, and the trial court found that at the time the defendant was (1) unfit for employment, (2) was not seeking employment, and (3) was too ill to seek employment. Consequently, the court denied her protection, and rendered a judgment of foreclosure by sale.[5]

On appeal, the defendant claims that because presently she is not employed and is unable to work due

[4] General Statutes § 49-31f (a) provides in relevant part: "[A] homeowner who is underemployed or unemployed against whom a foreclosure action is brought may make application, together with a financial affidavit . . . if: (1) The mortgage being foreclosed encumbers the residential real property, which property has served as his principal residence, for a period of not less than two years, (2) such homeowner has not had a foreclosure action commenced against him in the preceding seven-year period and (3) such homeowner has not received an emergency mortgage assistance loan and has not applied for emergency mortgage assistance for two years before the application . . . ."

[5] The record reflects that the defendant had not experienced a decrease in income. Rather, the record demonstrates that the defendant's income had increased, from approximately $2197 per week at the time that she applied for protection from foreclosure, to approximately $3500 per week in trust income and $387 per week in rental income at the time of hearing.

to illness, age and disability, she is an "unemployed person" as defined by the mortgage act; see footnote 3 of this opinion; and, therefore, she qualifies for protection under the act. Specifically, the defendant contends that in denying her protection, the trial court improperly equated "unemployed" with "eligibility" for unemployment benefits under chapter 567 of the General Statutes, commonly known as the Unemployment Compensation Act (unemployment act). See General Statutes § 31-222 et seq. According to the defendant, the mortgage act's definition of "unemployed persons" encompasses individuals who have never worked and are incapable of working in the future. Furthermore, the defendant claims that the trial court improperly denied her protection under the mortgage act because she was not "eligible" for unemployment benefits.[6] Conversely, the plaintiff argues that a person who has never been employed cannot be considered to be "unemployed" under the mortgage act and, therefore, cannot qualify for protection from mortgage foreclosure under that act. We agree with the plaintiff.

Whether the defendant is an "unemployed person" within the meaning of the mortgage act is a matter of statutory interpretation. Statutory interpretation is a matter of law over which this court's review is plenary. *Charles* v. *Charles*, 243 Conn. 255, 258, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998). In construing statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative

---

[6] Because we determine that the defendant does not satisfy the definition of unemployed person under the mortgage act and, therefore, cannot qualify for protection under that act, we need not address whether the trial court improperly denied the defendant protection on the basis of her ineligibility for unemployment benefits.

policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162 (1992). Statutes are to be construed "in a manner that will not thwart [their] intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319, 702 A.2d 1180 (1997). Furthermore, "[t]he law favors a rational statutory construction and we presume that the legislature intended a sensible result." *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985).

We begin with the language of the statute. General Statutes § 49-31d provides in part that an " '[u]nemployed person' means a person who is unemployed for the purposes of [the unemployment act]." The unemployment act does not contain a definition of the term "unemployed," nor does it define "unemployment." Instead, the unemployment act contains an extensive definition of "employment"; see General Statutes § 31-222 (a); and specifies a number of conditions that a previously employed person must satisfy in order to be "eligible" to receive unemployment benefits. See General Statutes § 31-235. The definition of employment contained in the unemployment act begins by stating generally that employment is "[a]ny service . . . performed under any express or implied contract of hire

creating the relationship of employer and employee." General Statutes § 31-222 (a) (1) (A).

In addition to referencing the unemployment act for a definition of an "unemployed person," the mortgage act also provides some indication of who is *not* to be considered unemployed. General Statutes § 49-31f (b) provides in relevant part that when the "property which is the subject of a foreclosure action is owned by more than one person . . . no homeowner [of the property] shall be deemed an unemployed person . . . unless the aggregate *earned* income of all the homeowners of the . . . property . . . during the twelve-month period immediately preceding the commencement of the foreclosure action is less than fifty thousand dollars and less than seventy-five per cent of the average aggregate annual *earned* income during the two years immediately preceding such twelve-month period for all such homeowners . . . ." (Emphasis added.) Similarly, the mortgage act defines an "underemployed person" as "a person whose *earned* income during the twelve-month period immediately preceding the commencement of the foreclosure action is (A) less than fifty thousand dollars and (B) less than seventy-five per cent of his [or her] average annual *earned* income during the two years immediately preceding such twelve-month period." (Emphasis added.) General Statutes § 49-31d (6).

Although neither the mortgage act nor the unemployment act explicitly defines which persons are to be considered "unemployed," the preceding provisions indicate that the legislature intended, in enacting both acts, to benefit persons who previously have held a position of employment. In defining what it means to be "underemployed" in § 49-31d (6), and in identifying who is *not* considered unemployed in § 49-31f (b), the

legislature repeatedly refers to *earned* income. Obviously, in order to have had earned income, a person must at one time have been employed.

Similarly, the unemployment act requires that a person have had earned income in order to qualify for unemployment compensation benefits. Under the unemployment act, a potential recipient must satisfy the eligibility requirements contained in § 31-235 in order to qualify for benefits. One of the eligibility requirements is that the person claiming benefits must have been paid wages by an employer who is subject to the provisions of the unemployment act during a certain period of time, identified as the "base period," prior to claiming benefits. General Statutes § 31-235 (a) (3). By placing this condition upon the right to receive benefits, the legislature has indicated that, in enacting the unemployment act, it intended to aid only persons experiencing temporary employment-related losses of earned income. The language of both the mortgage act and the unemployment act, therefore, provides a strong indication that only persons who previously have been employed are to be considered to be "unemployed" for purposes of the mortgage act.

The legislative policies underlying both acts further support this conclusion. The purpose of the unemployment act is to provide temporary monetary benefits to workers experiencing short-term unemployment or underemployment. See generally *Furber* v. *Administrator, Unemployment Compensation Act*, 164 Conn. 446, 324 A.2d 254 (1973). As we have discussed previously, the unemployment act requires that all potential recipients of unemployment compensation benefits satisfy the eligibility requirements of § 31-235 in order to actually receive such benefits. Furthermore, once eligibility has been established, the number of weeks during which benefits may be received is limited. The

conditional and temporary nature of the benefits indicates that the legislature intended to benefit only temporarily unemployed workers when it enacted the unemployment act.

Similarly, the legislative history of the mortgage act indicates that it was intended to provide a benefit for workers experiencing a decrease in earned income. The mortgage act was enacted in 1983, at a time when economic conditions were giving rise to extensive job loss, layoffs and cutbacks in employment. Discussions in the state House of Representatives prior to the enactment of the mortgage act evidence that it was designed as a temporary "mortgage moratorium for unemployed *workers.*" (Emphasis added.) 26 H.R. Proc., Pt. 25, 1983 Sess., p. 8973, remarks of Representative R. E. Van Norstrand. Although the legislative history of the mortgage act is not abundant, there is no indication anywhere in its history to suggest that the legislature intended to provide persons other than "unemployed workers" with protection from mortgage foreclosure under the act.

In that regard, it is also significant that, in enacting the mortgage act, the legislature chose to define the category of "unemployed persons" who would be the mortgage act's beneficiaries by reference to the unemployment act. The decision to identify unemployed persons as "persons unemployed for purposes of [the unemployment act]," indicates that both the mortgage act and the unemployment act were intended to benefit the same class of persons. Therefore, the purposes underlying both the mortgage act and the unemployment act provide a further reason to conclude that only persons who have been employed previously may qualify as "unemployed" under the mortgage act.

Finally, our conclusion is supported by the fact that the mortgage act contains a requirement that the court

consider, prior to affording an applicant protection against foreclosure under the mortgage act, whether the homeowner will likely be able to resume making timely payments after the six month period of protection ends. General Statutes § 49-31f (d) (1). This requirement indicates that the mortgage act intends only to help persons who are experiencing *temporary* economic difficulties. Considered in combination with the mortgage act's references to earned income and the unemployment act, this requirement lends additional support to our conclusion that the legislature had in mind only persons who are experiencing temporary employment-related losses or decreases in earned income as beneficiaries when it enacted the mortgage act.

In the present case, the defendant is a person who has never been employed. Further, she presently is not experiencing a temporary employment-related decrease in earned income.[7] An interpretation of the mortgage act that would include persons in the defendant's circumstances within the definition of "unemployed persons" would frustrate the legislature's intent in enacting the mortgage act, contrary to our expressed function. *Conway* v. *Wilton*, supra, 238 Conn. 663. Therefore, we conclude that in order to fall within the definition of an "unemployed person" under the mortgage act, an individual must have been employed previously.

The defendant claims that, although her financial problems are not the result of a decrease in earned income, she should nevertheless be allowed to benefit from the mortgage act because: (1) she is experiencing temporary economic difficulties due to increased health

[7] In fact, the defendant is not experiencing a decrease in income of any kind at all. Her unearned income has actually increased since she applied for protection. See footnote 5 of this opinion.

care costs; and (2) the mortgage act was intended generally to aid persons who temporarily are unable to pay their mortgages "due to economic conditions beyond their control." Neither the mortgage act nor its legislative history indicate an intent to provide assistance generally to all persons having difficulty paying their mortgage for reasons other than their employment situation and a decrease in earned income. Therefore, these claims by the defendant must fail.

The defendant also argues that General Statutes § 31-228,[8] contained within the unemployment act, defines unemployment in such a way so as to include persons in her circumstances. We disagree. According to that section, a "totally unemployed" individual is a person who "has performed during that week no services for which remuneration of any nature is payable . . . and has not engaged in any self-employment." General Statutes § 31-228. That section, entitled "[b]enefit for total unemployment," discusses total unemployment solely in the context of determining a person's benefit rate. The defendant misconstrues the term "total unemployment" as used in § 31-228 by failing to read it in the context of the entire section. When one rationally reads that section in its entirety; *State* v. *Parmalee*, supra, 197 Conn. 165; it becomes clear that the defendant is not "totally unemployed," because the section contemplates an employer-employee relationship, without which one's benefit rate cannot be calculated. In other words, one must be "unemployed" before one can become "totally unemployed."

For all of the reasons previously discussed, we conclude that the defendant, as an individual who never

[8] General Statutes § 31-228 provides in relevant part: "An eligible individual who is totally unemployed throughout a week . . . shall be paid, with respect to such week, an amount equal to his total unemployment benefit rate for the benefit year during which such week of unemployment occurs. An individual shall be deemed to be totally unemployed throughout a week

previously has been employed, is not an "unemployed person" within the meaning of § 49-31d (1) and, therefore, may not qualify for protection from mortgage foreclosure under the mortgage act.[9]

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and NORCOTT and PALMER, Js., concurred.

---

if he has performed during that week no services for which remuneration of any nature is payable . . . and has not engaged in any self-employment."

[9] Our decision does not address the defendant's claim that the trial court's decision violated the constitution of Connecticut by denying her equal protection of the laws on the basis of (1) her gender and (2) her status as a disabled person. The defendant did not raise either claim of error during the trial court proceedings and both claims fail to meet the requirements for exceptions to the general rule that only claims raised below can be argued on appeal. *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989). Under *Golding*, a defendant can, on appeal, prevail on a constitutional claim of error when the claim was not raised in the trial court only if all of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40.

The defendant's claim that she was denied equal protection of the laws on the basis of her gender fails to satisfy the requirements of the first prong of *Golding*. The defendant has failed to provide an adequate record for review of her claim because the mortgage act is gender-neutral on its face and the defendant has not introduced any evidence demonstrating that the purpose or intent of the mortgage act is to discriminate. See *Golab* v. *New Britain*, 205 Conn. 17, 26, 529 A.2d 1297 (1987) ("[a]n equal protection claim based on unequal application of the law . . . must be established by competent evidence . . . showing . . . intentional or purposeful discrimination" [citations omitted; internal quotation marks omitted]).

Similarly, the defendant's claim that she was denied equal protection of the laws on the basis of her disability also fails to satisfy the first prong of *Golding*. The record does not contain any evidence demonstrating that the defendant's disability is the reason for her previous lack of employment. Although the trial court found that, presently, the defendant is incapable of working, it did not determine whether the defendant's disability was the reason for her previous lack of employment, nor is there any evidence in the record to support such a conclusion. On the contrary, the evidence in

MCDONALD, J., dissenting. The only definition in the Unemployment Compensation Act; General Statutes § 31-222 et seq.; of an unemployed person is found in General Statutes § 31-228. Section 31-228 states that "[a]n individual shall be deemed to be totally unemployed throughout a week if he has performed during that week no services for which remuneration of any nature is payable . . . and has not engaged in any self-employment." To otherwise define an "unemployed person" as one previously employed would do violence to the purpose of the legislature. Under the majority's definition, a never-employed spouse of a laid-off worker would not qualify for protection from foreclosure of a house solely in the spouse's name. I do not believe that the legislature intended such a result.

Accordingly, I respectfully dissent.

the record seems to suggest that the defendant's previous lack of employment was because she had substantial unearned income with which to support herself.

In light of the insufficiency of the record, we decline to review the defendant's constitutional claims.