# LINDEN CONDOMINIUM ASSOCIATION, INC. *v.* R. RICHARD MCKENNA (SC 15971)

Callahan, C. J., and Borden, Katz, McDonald and Peters, Js.

Argued November 6, 1998—officially released February 2, 1999

*Patricia A. Ayars*, for the appellant (plaintiff).

*Nathan A. Schatz*, with whom was *Richard P. Weinstein*, for the appellee (defendant).

*Opinion*

KATZ, J. The two principal issues in this appeal are: (1) whether a condominium owners' association may seek a deficiency judgment under General Statutes § 49-14[1] as part of an action to foreclose a common charges

---

[1] General Statutes § 49-14 provides: "(a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"(b) Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case.

"(c) Any party to a mortgage foreclosure who has moved for an appraisal

lien pursuant to General Statutes § 47-258,[2] when the

of property for the purpose of obtaining a deficiency judgment, but has not been granted a deficiency judgment, or has not received full satisfaction of any deficiency judgment obtained subsequent to the filing of such motion, may make a motion to the court for a deficiency judgment as set forth in subsection (a) of this section. If such motion is made on or before November 1, 1979, such moving party shall be deemed to have complied with all of the requirements of subsection (a) of this section and shall be entitled to the benefit of any deficiency judgment rendered pursuant to said subsection (a).

"(d) Any appeal pending in the Supreme Court with regard to any deficiency judgment or proceedings relating thereto shall be stayed until a hearing is held pursuant to subsection (a) of this section. Any appellant in such an appeal shall have the right for a period of thirty days after the rendering of judgment pursuant to subsection (a) of this section to amend his appeal. There shall be no stay of such an appeal if no motion has been filed pursuant to this section on or before November 1, 1979."

[2] General Statutes § 47-258 provides: "(a) The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 are enforceable as assessments under this section. If an assessment is payable in instalments, the full amount of the assessment is a lien from the time the first instalment thereof becomes due.

"(b) A lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection and (B) the association's costs and attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens or the priority of liens for

first mortgagee has redeemed the units being foreclosed

other assessments made by the association.

"(c) Unless the declaration otherwise provides, if two or more associations have liens for assessments created at any time on the same property, those liens have equal priority.

"(d) Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.

"(e) A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within two years after the full amount of the assessments becomes due; provided, that if an owner of a unit subject to a lien under this section files a petition for relief under the United States Bankruptcy Code, the period of time for instituting proceedings to enforce the association's lien shall be tolled until thirty days after the automatic stay of proceedings under Section 362 of the Bankruptcy Code is lifted.

"(f) This section does not prohibit actions to recover sums for which subsection (a) of this section creates a lien or prohibit an association from taking a deed in lieu of foreclosure.

"(g) A judgment or decree in any action brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

"(h) The association on written request shall furnish to a unit owner a statement in recordable form setting forth the amount of unpaid assessments against the unit. The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board and every unit owner.

"(i) In a cooperative, on nonpayment of an assessment on a unit, the unit owner may be evicted in the same manner as provided by law in the case of an unlawful holdover by a tenant, and the lien may be foreclosed as provided by this section.

"(j) The association's lien may be foreclosed in like manner as a mortgage on real property.

"(k) In any action by the association to collect assessments or to foreclose a lien for unpaid assessments, the court may appoint a receiver of the unit owner pursuant to section 52-504 to collect all sums alleged to be due from that unit owner prior to or during the pendency of the action. The court may order the receiver to pay any sums held by the receiver to the association during the pendency of the action to the extent of the association's common expense assessments based on a periodic budget adopted by the association pursuant to subsection (a) of section 47-257.

"(l) If a holder of a first or second security interest on a unit forecloses that security interest, the purchaser at the foreclosure sale is not liable for any unpaid assessments against that unit which became due before the sale, other than the assessments which are prior to that security interest under subsection (b) of this section. Any unpaid assessments not satisfied from the proceeds of sale become common expenses collectible from all the unit owners, including the purchaser."

by paying the statutory superpriority to the association; and (2) whether such an association may thereafter bring a separate action for breach of contract to recover the remaining unpaid common charges. The plaintiff, Linden Condominium Association, Inc., a condominium owners' association, brought this action against the defendant, R. Richard McKenna, the owner of twelve condominium units, in order to collect unpaid condominium common charges, attorney's fees, and costs based on the defendant's personal liability. Following the judgment of the trial court limiting the plaintiff's right to damages, the plaintiff appealed to the Appellate Court. We transferred this appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

The parties have stipulated to the following facts. Prior to bringing the present action, pursuant to the Common Interest Ownership Act (act), General Statutes § 47-200 et seq., specifically § 47-258, the plaintiff brought a foreclosure action against the defendant to foreclose its statutory lien for unpaid common charges. The trial court rendered a judgment of strict foreclosure, determined that the defendant's total debt secured by the lien was $74,596.01, awarded $1500 in attorney's fees and $1653.60 in costs, and set law days.[3] On its law day, Shawmut Bank Connecticut, N.A. (Shawmut), the holder of the first mortgage on the condominiums in question, redeemed the units by paying the plaintiff the six month superpriority lien plus attorney's fees and costs. Specifically, Shawmut paid the plaintiff $15,000 for six months of common charges, plus $1500 in attorney's fees and $1653.60 in costs. Consequently, $59,596.01 remained as an unpaid debt for common charges. Seven days later, the plaintiff moved for a deficiency judgment pursuant to § 49-14, but the court denied the motion as untimely.[4]

---

[3] The plaintiff had requested $5000 in legal fees and $3470.60 in costs.

[4] See footnote 1 of this opinion for the text of § 49-14.

On November 16, 1995, the plaintiff filed the present action for breach of contract and failure to comply with General Statutes § 47-257, which sets forth the law regarding assessments for common charges.[5] The plaintiff seeks: (1) the remaining common charges of $59,596.01 not recovered in the prior foreclosure action; (2) $11,556 plus 18 percent interest per annum for the common charges and late fees that had accrued in May and June of 1995, the months between the date of judgment and the date of redemption; and (3) costs and attorney's fees incurred in connection with the collection of the debt.

The defendant responded by filing a motion for summary judgment, claiming that the present action was barred by res judicata because the plaintiff unsuccessfully had sought a deficiency judgment in the prior foreclosure action. The defendant claimed that, even if the plaintiff had not been required to seek a deficiency judgment pursuant to § 49-14, it chose to do so, and therefore, the trial court's denial of the plaintiff's deficiency judgment motion precluded any further litigation to collect the same debt. The defendant further argued that the debt itself no longer existed because it had merged into the foreclosure judgment. In a pretrial memorandum of decision dated November 1, 1996, *Hon. Jerry Wagner*, judge trial referee, denied the motion for summary judgment, concluding that the present action

[5] General Statutes § 47-257 provides in relevant part: "(a) Until the association makes a common expense assessment, the declarant shall pay all common expenses. After an assessment has been made by the association, assessments shall be made at least annually, based on a budget adopted at least annually by the association.

"(b) Except for assessments under subsections (c), (d) and (e) of this section, all common expenses shall be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsections (a) and (b) of section 47-226. Any past due common expense assessment or instalment thereof bears interest at the rate established by the association not exceeding eighteen per cent per year. . . ."

was not barred because the plaintiff could not have maintained a deficiency judgment claim pursuant to § 49-14. The trial court added that § 47-258 (f) does not prohibit a postforeclosure action on the debt against a unit owner.[6] Therefore, the case was tried to the court, *Freed, J.*

In his posttrial memorandum of decision, however, Judge Freed concluded otherwise. Specifically, the court held that, in the foreclosure action, after the trial court had established the amount due the plaintiff, and after Shawmut had redeemed the condominium units, the plaintiff had a choice either to pursue a deficiency judgment pursuant to § 49-14 or to bring a separate action to collect the remaining debt. The court further reasoned, however, that because the plaintiff by motion had pursued a deficiency judgment, which was denied as untimely, the doctrine of res judicata barred the plaintiff from subsequently bringing an action to collect the unrecovered sum from the prior foreclosure action. Accordingly, the trial court rendered judgment for the plaintiff for only $19,070.06, which sum consisted of $11,556 that the parties had stipulated represented the common charges for May and June of 1995, plus $5026.66 in interest and $2487.40 in attorney's fees incurred in the present action.

On appeal, the plaintiff's principal claim is that, pursuant to § 47-258, a condominium association can bring an action for unpaid common charges following a foreclosure action for whatever debt remained unsatisfied after judgment in the foreclosure action. Additionally, as part of this action, the plaintiff seeks common charges that accrued between the dates of judgment and redemption, and costs and attorney's fees incurred in connection with the collection of the debt.[7] In support

---

[6] See footnote 2 of this opinion for the text of § 47-258 (f).

[7] Specifically, the plaintiff is seeking costs and attorney's fees that had been requested but denied by the trial court in the prior foreclosure action, as well as costs and attorney's fees incurred in the present action.

of its claim, the plaintiff argues that § 49-14 does not permit a deficiency judgment when the foreclosing party does not obtain title to the property, and that neither General Statutes § 49-1[8] nor the doctrine of res judicata bars further action on a debt after a judgment of foreclosure has been rendered.[9] Conversely, the defendant maintains that the plaintiff had the legal right to pursue a deficiency judgment in the foreclosure action and that § 49-1 is a bar against further actions on the debt, such as the present one. The defendant further asserts that even if § 49-1 were not a bar, the doctrine of res judicata bars the plaintiff from bringing this claim because the plaintiff unsuccessfully had pursued a deficiency judgment as a part of the prior foreclosure action. Finally, the defendant contends that collateral estoppel prevents the plaintiff from requesting the attorney's fees and costs that had accrued in connection with the foreclosure action, and which had been requested, but denied, in that action.

We agree with the plaintiff that § 49-14 did not provide a remedy available to the plaintiff and we reverse the

[8] General Statutes § 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure . . . ."

[9] The plaintiff also argues that the doctrine of stare decisis bound Judge Freed and, therefore, required him to follow Judge Wagner's decision regarding the defendant's motion for summary judgment. We disagree. The applicable doctrine is not stare decisis, but the law of the case, which did not bind Judge Freed. See *Breen* v. *Phelps*, 186 Conn. 86, 98–99, 439 A.2d 1066 (1982) ("A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." [Citations omitted; internal quotation marks omitted.]).

judgment of the trial court. We also conclude, however, that the doctrine of collateral estoppel precludes the plaintiff from recovering the attorney's fees and costs that had been denied in the foreclosure action.

I

We first address the plaintiff's claim that the trial court improperly determined that the plaintiff could have obtained a deficiency judgment pursuant to § 49-14 in an action to foreclose a common charges lien created by § 47-258 in which a first mortgagee had redeemed by paying the plaintiff's statutory superpriority. We agree with the plaintiff.

Whether the plaintiff, under the circumstances of this case, could seek a deficiency judgment is a matter of statutory interpretation and is an issue of first impression for this court. Statutory interpretation is a matter of law, and, therefore, the trial court's judgment is subject to plenary review. See *Shawmut Mortgage Co.* v. *Wheat*, 245 Conn. 744, 748, 717 A.2d 664 (1998). Well settled principles govern such a review. When we construe a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). We construe each sentence, clause or phrase to have a purpose behind it. *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162

(1992). In addition, we presume that the legislature intends sensible results from the statutes it enacts. *State v. Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985). Therefore, we read each statute "in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319, 702 A.2d 1180 (1997).

Regarding the act specifically, we have stated that, "[i]n determining whether [the act] affords the relief that the [plaintiff] seeks, it is axiomatic that we strive to ascertain and give effect to the apparent intent of the legislature. . . . In addition, we consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Citations omitted; internal quotation marks omitted.) *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 451, 541 A.2d 1226 (1988).

The act, which is largely modeled after the Uniform Common Interest Ownership Act, was created in order to provide unit owners and their associations with consumer protection rights, as well as to afford developers, lenders and title insurers with flexibility and certainty in establishing common interest communities. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1983 Sess., pp. 1821–24, remarks of William Breetz;[10] see also *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 30, 717 A.2d 77 (1998). Section 47-258, which is a part of the act, establishes a lien with a split priority. Additionally, it authorizes and describes appropriate foreclosure mechanisms. In derogation of the common-law rule that first in time is first in right, § 47-258 (b) establishes a

---

[10] Since the act's inception, 1995 amendments have transformed the act so that it substantially conforms with the 1994 version of the Uniform Common Interest Ownership Act. See, e.g., Public Acts 1995, No. 95-187.

priority for common charges and a superpriority for " 'the common expense assessments . . . which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce . . . the association's lien . . . .' " *Hudson House Condominium Assn., Inc.* v. *Brooks*, 223 Conn. 610, 614, 611 A.2d 862 (1992), quoting General Statutes § 47-258 (b). The split priority establishes a superpriority for up to six months of common charges and attorney's fees and costs prior to first and second mortgages and taxes, and establishes a recording lien for the remainder of the common charges that is prior to many other liens. Thus, the statute provides an owners' association with a speedy mechanism by which it can secure up to six months of unpaid common charges, as well as attorney's fees and costs incurred in such a pursuit. The creation of a lien with such a superpriority protects consumers, because unit owners depend on their association for vital maintenance services.

Section 47-258 also expressly permits actions based on personal liability for unpaid common charges. Section 47-258 (f) provides: "This section does not prohibit actions to recover sums for which subsection (a) of this section creates a lien or prohibit an association from taking a deed in lieu of foreclosure." Hence, contrary to the defendant's arguments, § 47-258 (f) allows an association to sue a unit owner based on the owner's personal liability, in addition to the association's statutory right to foreclose on its lien. The final phrase, "in lieu of foreclosure," merely modifies "taking a deed," thereby leaving intact the express statement that there is no bar to such a course of action. Furthermore, the defendant's argument that subsections (f) and (j), read together, limit an association's choices to either an action on the debt or a foreclosure action, is without merit. Section 47-258 (j) provides that "[t]he [condominium] association's lien may be foreclosed in like manner

as a mortgage on real property," and merely relates to the procedures to be used in common charges lien foreclosures. There is no language in either subsection that indicates that the plaintiff must choose one action or the other.

We turn our attention next to § 49-14, which permits a party in a mortgage foreclosure to file a motion for a deficiency judgment to recover postredemption unpaid debt in certain situations.[11] Although § 49-14 (a) explicitly applies only to mortgage foreclosures, we recently concluded in *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa,* 220 Conn. 643, 649, 600 A.2d 1 (1991), that the deficiency judgment provisions of § 49-14 (a) apply as well to judgment liens on real property. In that case, our reading of the language of the statute was based on General Statutes § 52-380a (c),[12] a provision parallel to § 47-258 (j), and on our public policy to promote efficiency. Id., 649–50. We also noted in *Fairfield Plumbing & Heating Supply Corp.* that other jurisdictions do not appear to distinguish between mortgages and liens with respect to deficiency judgments. Id., 651–52 n.12, citing *Ringle* v. *Wallis Iron Works,* 93 N.Y. Sup. Ct. (86 Hun.) 153, 155–56, 33 N.Y.S. 398 (1895) ("[t]here is nothing . . . which prevents one establishing a lien from obtaining his full relief, which includes his right to enforce it, not only out of the property against which the [mechanic's] lien is filed, but for any deficiency against the person who for the amount thereof is indebted to the claimant"), aff'd, 155 N.Y. 674, 49 N.E. 1103 (1898).

The history of mortgage foreclosures and the development of deficiency judgments help to explain the

---

[11] See footnote 1 of this opinion for the text of § 49-14.

[12] General Statutes § 52-380a (c), which was at issue in *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa,* supra, 220 Conn. 643, provides in relevant part: "A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property. . . ."

scope and function of these laws today. "At common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt.[13] In *Derby Bank* v. *Landon*, 3 Conn. 62, 63 (1819), this court held that 'a foreclosure and consequent possession . . . is in the nature of satisfaction of a debt secured by mortgage. It is deemed an appropriation of the thing pledged, in payment of the demand, for which it was security.' " *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 647. Thus, even if the value of the property that the mortgagee gained was less than the debt owed to her, the entry of judgment precluded any further common-law proceedings on the note. Id. Consequently, in 1833, the legislature created the remedy of the deficiency judgment[14] in order to make the plaintiff whole when the value of the security did not cover the amount of the debt owed to the plaintiff. Id.; see also D. Caron, Connecticut Foreclosures (3d Ed. 1997) § 9.05A, p. 247.

Today deficiency judgments are calculated pursuant to § 49-14 (a), which provides in relevant part: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. . . . At such hearing the court shall hear the evidence, *establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim.* The plaintiff in any further action upon the debt, note or obligation, shall

[13] General Statutes § 49-1 in part codifies this common-law rule. Section 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure . . . ."

[14] Public Acts 1833, c. 18, §§ 1 and 2.

recover only the amount of such judgment." (Emphasis added.)

As previously stated, we have read § 49-14 to apply to statutorily created judgment lien foreclosures pursuant to a provision similar to § 47-258 (j). *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 651. It follows, therefore, that § 49-14 *should* also apply to statutorily created liens for common charges. In *Fairfield Plumbing & Heating Supply Corp.*, however, title vested in the party foreclosing the judgment lien. There is no analogous legal precedent for applying § 49-14 to the present situation, in which title did not vest in the foreclosing party who brought the claim for a deficiency judgment.

On its face, § 49-14 (a) applies only where there has been no redemption and title has vested in the foreclosing plaintiff. Although § 49-14 provides that *"any party* to a mortgage foreclosure may file a motion seeking a deficiency judgment"; (emphasis added); these words do not change our analysis, because the moving party must still have possession of the property in question in order for there to be a valuation and a corresponding calculation of a deficiency. In the present case, a deficiency cannot be calculated under § 49-14 (a) because the plaintiff's claimed deficiency is not created by inadequate value in the premises being foreclosed; rather, it arises as a result of the split priority.[15] The plaintiff did not acquire possession of the property, and therefore, the trial court cannot possibly make a finding that the

---

[15] The split priority, making six months of common charges and attorney's fees and costs prior to first and second mortgage liens, and the remainder of the common charges lien prior to many other liens, creates a unique situation in which the superpriority held by condominium associations will often be paid by first mortgagees, but part of the debt is still owed to them. Therefore, the deficiency is created by the split priority, not as a result of the value of the property being insufficient to satisfy the debt. See generally D. Caron, supra, § 12.07.

value of the property is insufficient to satisfy fully the plaintiff's debt. The necessary calculation, which entails the "difference, if any, between such valuation and the plaintiff's claim"; General Statutes § 49-14 (a); requires a valuation of the property by the court. Such a valuation necessitates that the foreclosure action resulted in title to the property having vested in the plaintiff. Consequently, while § 49-14 (a) does not require explicitly that title vest in the plaintiff, it is impossible to apply the statute if, as in the present case, title vests in a mortgagee who redeems on its law day. In such a case, the value of the property is irrelevant to the debt still due the association after the foreclosure action. D. Caron, supra, § 12.07, p. 338.

Our conclusion is further supported by the fact that, although this case creates an issue of first impression, our reading of § 49-14 (a) is consistent with our prior cases involving § 49-14 (a). For example, we have made it clear that "strict compliance with [§ 49-14 (a)'s] provisions [is] a condition precedent to the entry of a deficiency judgment. . . . The necessity of a definite rule of general application and, as well, an unvarying adherence to it, is manifest. Departures from it, if permitted, might lead to grave abuse." (Internal quotation marks omitted.) *Simsbury Bank & Trust Co.* v. *Ray Carlson Lumber Co.*, 154 Conn. 216, 218, 224 A.2d 544 (1966).

More specifically, we have explained that it is a mandatory statutory requirement that a hearing be held at which the court " 'shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim.' " *First Bank* v. *Simpson*, 199 Conn. 368, 371, 507 A.2d 997 (1986), quoting Practice Book § 528, now § 23-19. In our discussion of the proper method of calculating a deficiency in *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 647, we specified that

"[b]efore rendering a deficiency judgment, the court must have a mechanism for establishing the value of the subject property to determine whether and to what extent a deficiency exists." When analyzing another aspect of § 49-14 (a), we stated that it is a necessary element that a plaintiff prove that the property was worth less than the amount of the debt on the date of the vesting of title. *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 451, 582 A.2d 182 (1990). Lastly, in *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 278–79 n.10, 630 A.2d 1010 (1993), we concluded that "without such a determination [of fair market value of property] there would be no way to determine whether the mortgagee was entitled to such a judgment and, if so, the amount thereof." Thus, it is clear that § 49-14 (a) should not be read to allow a deficiency judgment when a deficiency cannot be calculated based on the value of the property in accordance with the statute.

The defendant asserts that the relevant language of § 49-14—"establish a valuation for the mortgaged property"—refers to the amount of money Shawmut paid the plaintiff when it redeemed on its law day. This argument has no merit. Although such a reading creates a mathematical equation upon which the remaining debt could be calculated, there is no basis in the statutory language, its legislative history, or in any of our prior readings of § 49-14 for the defendant's claim that "valuation" is not linked to the value of the property.

In summary, we conclude that the plaintiff was not able to bring a deficiency judgment claim in the former action pursuant to § 49-14 because the first mortgagee redeemed by paying the plaintiff's statutory superpriority.

## II

We next address whether § 49-1 or the doctrine of res judicata bars the plaintiff from bringing the present action. We find no bar to the present action.

A

The defendant contends that, in the context of common charges liens, as well as mortgage foreclosures, § 49-1 mandates that the plaintiff must choose between bringing a foreclosure action or an action on the debt. Hence, according to the defendant, § 49-1 bars the present action because the plaintiff chose to bring the foreclosure action under § 47-258. We disagree.

The application of § 49-1 is also an issue of statutory interpretation to which we will give plenary review. Necessarily, it will be governed by the aforementioned principles of statutory construction.

We begin with the language of the relevant statutes. Section 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure . . . ." Accordingly, on its face, § 49-1 applies only to mortgage foreclosures. Furthermore, there is no explicit statutory bar to further actions after the common charges lien foreclosure action. On the contrary, subsection (f) of § 47-258[16] specifically provides that the foreclosure provisions of the statute do not prohibit any action to recover debts upon which the statutory lien is based.

Our interpretation of § 49-1 is consistent with our reading of § 49-14, and the historical developments of the act and mortgage foreclosure law. Having rejected an interpretation of § 49-14 allowing for a deficiency

[16] See footnote 2 of this opinion for the text of § 47-258 (f).

judgment claim in a case like the present one, the application of § 49-1 to a common charges lien that creates a split priority would deny many owners' associations full relief. Typically, at least part of the debt will be unsatisfied after a common charges lien foreclosure in which the first or second mortgagee redeems. If § 49-1 were to bar a separate, second action on the debt, condominium associations that did not gain possession of the unit(s) at issue would have no mechanism through which to satisfy any debt based on charges that accrued outside the six months preceding the foreclosure action. For example, in the present case, the plaintiff was incapable of obtaining satisfaction for the entire lien because it was unable to seek a deficiency judgment in the initial foreclosure action. To bar the plaintiff, and others like it, from bringing this type of action on a debt would create absurd results that would thwart the intended purpose of the act. See *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 319; *State* v. *Parmalee*, supra, 197 Conn. 165 (refusing to read statute in manner that would lead to bizarre results). The split priority was created in order to provide the owners' associations with a quick, efficient mechanism through which to obtain payment for unremitted common charges, not to deprive them of complete satisfaction of unit owners' debts. More generally, the remedy of deficiency judgment itself was created in order to provide the foreclosing party a mechanism through which to recover unsatisfied debt. *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 647; see also part I of this opinion. Consequently, because a deficiency judgment is not available to the plaintiff, it would contravene legislative intent to prevent the plaintiff from bringing a subsequent separate action to recover any unsatisfied debt.

Our conclusion is further supported by the act's mandate of liberal construction. Generally, the act must be

afforded liberal construction in favor of the intended beneficiaries because it is a remedial statute. See *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 623, 642 A.2d 1186 (1994). More specifically, General Statutes § 47-212 (a) provides in relevant part: "The remedies provided by [the act] shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed . . . ." Consequently, even though it requires no liberal construction in order to reach our conclusion, to reach any other resolution would violate § 47-212. As stated previously, to allow § 49-1 to bar the present action when the plaintiff was not able to pursue a deficiency judgment under § 49-14, would prevent the plaintiff from being put in as good a position as if the defendant had paid the requisite common charges.

Finally, our holding that § 49-1 does not apply to liens for common charges is also consistent with our analogous decision in *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa,* supra, 220 Conn. 649. In that case, we explained that, unlike a mortgage foreclosure judgment, a judgment of foreclosure on a judgment lien does not extinguish the original judgment, which remains valid as to any uncollected portion. Id. It was implicit in our holding that § 49-1 did not apply to judgment lien foreclosures. Similarly, the original common charges debt is not extinguished by a foreclosure action based on a statutorily created lien, hence § 49-1 does not bar further actions on the debt.

In contrast, the defendant claims that the statement in § 47-258 (j) that an association lien "may be foreclosed in like manner as a mortgage on real property" invokes the bar contained in § 49-1. We are not persuaded. Subsection (j) of § 47-258 governs only the procedures for foreclosing mortgages on real property. Section 49-1, in contrast, does not relate to the manner in which a mortgage is foreclosed, but, rather, serves

to bar any action on the debt *after* a foreclosure. In short, the language and legislative history of the relevant statutes, the public policies behind them, and our holding in *Fairfield Plumbing & Heating Supply Corp.* contravene the defendant's proposed reading.

## B

The defendant also argues that the present action is barred by the doctrine of res judicata because of the plaintiff's previous unsuccessful pursuit of a deficiency judgment. Although the plaintiff moved for a deficiency judgment pursuant to § 49-14, which motion was denied as untimely, the plaintiff counters that res judicata does not apply to the present action because it was not legally able to seek a deficiency judgment in the prior foreclosure action. As we have previously stated, we agree with the plaintiff that a deficiency judgment was not available under the circumstances of this case and, therefore, the doctrine of res judicata does not apply.

The applicability of res judicata also raises a question of law, and is, therefore, subject to our plenary review. See *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 684, 719 A.2d 62 (1998). "[U]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, *if rendered on the merits*, is an absolute bar to a subsequent action on the same claim . . . [or any claim based on the same operative facts that] might have been made. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding . . . ." (Emphasis altered; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997). We have further stated that "a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration

of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . ." *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 591, 674 A.2d 1290 (1996).

We conclude that the doctrine of res judicata does not bar the present action for two reasons. First, its application would have to be predicated on the fact that the plaintiff already had brought a deficiency judgment action on the outstanding debt. We have determined, however, that the plaintiff was not able to bring such a claim in its foreclosure action. Thus, res judicata cannot bar the plaintiff because it brought an action it was not entitled to bring. See *Swift* v. *McPherson*, 232 U.S. 51, 56, 34 S. Ct. 239, 58 L. Ed. 499 (1914) (dismissal is not on merits if dismissed for want of jurisdiction); see also *Trans World Airlines, Inc.* v. *Hughes*, 317 A.2d 114, 119 (Del. 1974) (judgment based on defective pleadings or lack of jurisdiction in prior action will not serve as bar to second action), aff'd, 336 A.2d 572, cert. denied, 423 U.S. 841, 96 S. Ct. 72, 46 L. Ed. 2d 61 (1975). Although the doctrine of res judicata may bar an action that a party did bring or *could have brought*; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 589; the fact that the plaintiff could not legally have obtained a deficiency judgment in the prior action, as we have concluded, precludes the application of that strand of the res judicata doctrine. Second, even if the plaintiff's deficiency judgment claim could be challenged under the doctrine of res judicata, the doctrine would not apply in the present action because the trial court's dismissal was based on untimeliness and not on the merits of the claim. See *Connecticut National Bank* v. *Rytman*, supra, 241 Conn. 43. In summary, we conclude that the trial court improperly determined that the doctrine of res judicata bars the present action.

III

The final issue on appeal is whether collateral estoppel bars the plaintiff from requesting the attorney's fees and costs that had accrued, had been requested, but had been denied by the trial court in the prior foreclosure action.[17] The issue of collateral estoppel was raised in the trial court proceedings, but was never addressed by the trial court in light of its disposition of the case. Because this is an issue of law on which the record is complete, we resolve the claim in the interest of judicial economy, and conclude that the plaintiff cannot now seek those fees and costs.

Collateral estoppel, like its cousin res judicata, presents a question of law that we review de novo. See *Tirozzi* v. *Shelby Ins. Co.*, supra, 50 Conn. App. 684. "Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991).

In the prior foreclosure action, the trial court made a factual determination in the award of attorney's fees and costs pursuant to § 47-258 (g).[18] The plaintiff sought $8470.60 in attorney's fees and costs, but was awarded only $3153.60.[19] Pursuant to § 47-258 (g), the trial court necessarily and reasonably determined the amount of costs and attorney's fees to be awarded. Accordingly,

---

[17] These attorney's fees and costs are distinct from the $2487.40 in attorney's fees that the trial court awarded the plaintiff for pursuing this action.

[18] See footnote 2 of this opinion for the text of § 47-258 (g).

[19] See footnote 3 of this opinion and its accompanying text.

Shawmut paid the plaintiff $3153.60 when it redeemed on its law day. Consequently, the plaintiff is collaterally estopped from seeking the additional $5317 in the present action.

## IV

In conclusion, we hold that the plaintiff did not have available the remedy of a deficiency judgment in the prior foreclosure action. In addition, we conclude that neither § 49-1 nor the doctrine of res judicata bars the present action. We do, however, limit the plaintiff's claim to: (1) the unrecovered common charges debt ($59,596.01); (2) the common charges that accrued between the dates of the foreclosure judgment and redemption ($11,556) plus 18 percent interest per annum; and (3) the costs and attorney's fees incurred solely in connection with the present action.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff for its debt, common charges, costs, and its reasonable attorney's fees in this action.

In this opinion the other justices concurred.