TOWN OF WINCHESTER *v.* NORTHWEST
ASSOCIATES ET AL.
(SC 16349)

Borden, Katz, Palmer, Vertefeuille and Lavery, Js.

---

Argued October 24, 2000—officially released February 27, 2001

*Kevin F. Nelligan,* for the appellant (plaintiff).

*Terence D. Mariani,* for the appellee (named defendant).

*Opinion*

PALMER, J. The sole issue presented by this appeal is whether a municipality that has foreclosed upon tax liens pursuant to General Statutes § 12-181[1] is entitled

---

[1] General Statutes § 12-181 provides: "Whenever used in this section, unless the context otherwise requires, 'municipality' has the meaning given thereto in section 12-141. The tax collector of any municipality may bring suit for the foreclosure of tax liens in the name of the municipality by which the tax was laid, and all municipalities having tax liens upon the same piece of real estate may join in one complaint for the foreclosure of the same, in which case the amount of the largest unpaid tax shall determine the jurisdiction of the court. If all municipalities having tax liens upon the same piece of real estate do not join in a foreclosure action, any party to such action may petition the court to cite in any or all of such municipalities as may

to a deficiency judgment under General Statutes § 49-14.[2] The plaintiff, the town of Winchester, instituted a

be omitted, and the court shall order such municipality or municipalities to appear in such action and be joined in one complaint. The court in which action is commenced shall continue to have jurisdiction thereof and may dispose of such action in the same manner as if all the municipalities had commenced action by joining in one complaint. If one or more municipalities having one or more tax liens upon the same piece of property are not joined in one action, each of such municipalities shall have the right to petition the court to be made a party plaintiff to such action and have its claims determined in the same action, in which case the same court shall continue to have jurisdiction of the action and shall have the same rights to dispose of such action as if all municipalities had originally joined in the complaint. The court having jurisdiction under the provisions of this section may limit the time for redemption, order the sale of the real estate, determine the relative amount of the undivided interest of each municipality in real estate obtained by absolute foreclosure if two or more municipalities are parties to one foreclosure action or pass such other decree as it judges to be equitable. If one or more municipalities foreclose one or more tax liens on real estate and acquire absolute title thereto and if any other municipality having one or more tax liens upon such real estate at the time such foreclosure title becomes absolute has not, either as plaintiff or defendant, been made a party thereto, the tax liens of each of such other municipalities shall not be thereby invalidated or jeopardized."

[2] General Statutes § 49-14 provides: "Deficiency judgment. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"(b) Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case.

"(c) Any party to a mortgage foreclosure who has moved for an appraisal of property for the purpose of obtaining a deficiency judgment, but has not been granted a deficiency judgment, or has not received full satisfaction of any deficiency judgment obtained subsequent to the filing of such motion, may make a motion to the court for a deficiency judgment as set forth in subsection (a) of this section. If such motion is made on or before November 1, 1979, such moving party shall be deemed to have complied with all of the requirements of subsection (a) of this section and shall be entitled to the

tax lien foreclosure action against the named defendant, Northwest Associates[3] and obtained a judgment of strict foreclosure. The plaintiff thereafter filed a motion seeking a deficiency judgment pursuant to § 49-14. The trial court denied the plaintiff's motion, concluding that the deficiency judgment provisions of § 49-14 do not apply to tax lien foreclosures. The plaintiff appealed from the denial of its motion for a deficiency judgment to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Because we agree with the trial court that a deficiency judgment is not available in a tax lien foreclosure action, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our disposition of this appeal. The defendant failed to pay certain municipal real estate taxes for tax years 1990 through 1997 on property that it had owned at 9-11 Birdsall Street in Winsted. Consequently, the plaintiff filed tax liens on that property, covering tax years 1990 through 1996. The plaintiff commenced a foreclosure action and, thereafter, the trial court, *DiPentima, J.*, granted the plaintiff's motion for a judgment of strict foreclosure. The trial court found that the value of the property was $39,000 at the time judgment was rendered and that the defendant owed

benefit of any deficiency judgment rendered pursuant to said subsection (a).

"(d) Any appeal pending in the Supreme Court with regard to any deficiency judgment or proceedings relating thereto shall be stayed until a hearing is held pursuant to subsection (a) of this section. Any appellant in such an appeal shall have the right for a period of thirty days after the rendering of judgment pursuant to subsection (a) of this section to amend his appeal. There shall be no stay of such an appeal if no motion has been filed pursuant to this section on or before November 1, 1979."

[3] Fleet National Bank also was a defendant in the foreclosure action but is not a party to this appeal. Accordingly, all references to the defendant are to Northwest Associates.

Northwest Associates is a Connecticut general partnership.

the plaintiff a total of $48,464.06.[4] The debt, therefore, exceeded the value of the property by $9464.06. After title to the property had vested in the plaintiff in accordance with the trial court's judgment, the plaintiff filed a motion for a deficiency judgment pursuant to § 49-14. The trial court, *Frazzini, J.*, denied the plaintiff's motion, concluding that a municipality that obtains a judgment of strict foreclosure in a tax lien foreclosure action pursuant to § 12-181 is not entitled to a deficiency judgment under § 49-14.

In rejecting the plaintiff's claim, the trial court relied on the fact that neither of the two relevant statutory provisions, namely, § 12-181, which governs the foreclosure of tax liens; see footnote 1 of this opinion; and § 49-14, which sets forth the procedure pursuant to which a deficiency judgment may be obtained in a mortgage foreclosure action; see footnote 2 of this opinion; contains any language indicating that a deficiency judgment is available in a tax lien foreclosure action. On appeal, the plaintiff challenges the conclusion of the trial court, claiming that a tax lienor has the right to seek a deficiency judgment because (1) we previously have indicated that the efficient resolution of lien foreclosure actions is promoted by allowing the lienor to obtain a deficiency judgment, and (2) a deficiency judgment rendered pursuant to § 49-14 may be obtained in judgment lien foreclosure actions pursuant to General Statutes § 52-380a (c);[5] *Fairfield Plumbing & Heating*

---

[4] This amount includes $578.75 for costs associated with the foreclosure action.

[5] General Statutes § 52-380a provides: "Judgment lien on real property. (a) A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, containing: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the money judgment and the amount due thereon; and (2) a description, which need not be by metes and bounds, of the real property on which a

*Supply Corp.* v. *Kosa,* 220 Conn. 643, 651, 600 A.2d 1 (1991); and in condominium lien foreclosure actions pursuant to General Statutes § 47-258 (j);[6] see *Linden Condominium Assn., Inc.* v. *McKenna,* 247 Conn. 575,

lien is to be placed, and a statement that the lien has been placed on such property.

"(b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment, provided the judgment lien certificate contains a clause referring to and identifying the attachment, substantially in the following form: 'This lien is filed within four months after judgment in the action was rendered and relates back to an attachment of real property recorded on (month) (day) (year), at Volume ___ Page ___ of the ___ land records.'

"(c) A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property. In the case of a consumer judgment, the complaint shall indicate whether, pursuant to an installment payment order under subsection (b) of section 52-356d, the court has entered a stay of execution and, if such a stay was entered, shall allege any default on an installment payment order which is a precondition to foreclosure. No action to foreclose a judgment lien filed pursuant to this section may be commenced unless an execution may issue pursuant to section 52-356a. The judgment lien shall expire twenty years after the judgment was rendered unless the party claiming the lien commences an action to foreclose it within that period of time and records a notice of lis pendens in evidence thereof on the land records of the town in which the real property is located."

[6] General Statutes § 47-258 provides: "Lien for assessments. (a) The [common interest community unit owner's] association [organized under section 47-243] has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

"(b) A lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to, (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a first or second security interest encumbering only the unit owner's interest and perfected before the date on which the assessment sought to be enforced

became delinquent, and (3) liens for real property taxes and other governmental assessments or charges against the unit or cooperative. The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection and (B) the association's costs and attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens or the priority of liens for other assessments made by the association.

"(c) Unless the declaration otherwise provides, if two or more associations have liens for assessments created at any time on the same property, those liens have equal priority.

"(d) Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.

"(e) A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within two years after the full amount of the assessments becomes due; provided, that if an owner of a unit subject to a lien under this section files a petition for relief under the United States Bankruptcy Code, the period of time for instituting proceedings to enforce the association's lien shall be tolled until thirty days after the automatic stay of proceedings under Section 362 of the Bankruptcy Code is lifted.

"(f) This section does not prohibit actions to recover sums for which subsection (a) of this section creates a lien or prohibit an association from taking a deed in lieu of foreclosure.

"(g) A judgment or decree in any action brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

"(h) The association on written request shall furnish to a unit owner a statement in recordable form setting forth the amount of unpaid assessments against the unit. The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board and every unit owner.

"(i) In a cooperative, on nonpayment of an assessment on a unit, the unit owner may be evicted in the same manner as provided by law in the case of an unlawful holdover by a tenant, and the lien may be foreclosed as provided by this section.

"(j) The association's lien may be foreclosed in like manner as a mortgage on real property.

"(k) In any action by the association to collect assessments or to foreclose a lien for unpaid assessments, the court may appoint a receiver of the unit owner pursuant to section 52-504 to collect all sums alleged to be due from

588, 726 A.2d 502 (1999). We are not persuaded by the plaintiff's claim.

Our resolution of this appeal is guided by well established principles of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Finally, because the question presented by this appeal involves an issue of statutory construction, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Schreck* v. *Stamford*, 250 Conn. 592, 596–97, 737 A.2d 916 (1999). In applying the foregoing principles to this case, we are persuaded that the plaintiff's claim is without merit.

First, the relevant statutory language provides no support for the plaintiff's contention. Section 12-181, which specifies the manner in which a tax lien foreclosure may be obtained, contains no reference to the availability of a deficiency judgment. Section 49-14, which addresses deficiency judgments in mortgage foreclosure actions,

---

that unit owner prior to or during the pendency of the action. The court may order the receiver to pay any sums held by the receiver to the association during the pendency of the action to the extent of the association's common expense assessments based on a periodic budget adopted by the association pursuant to subsection (a) of section 47-257.

"(*l*) If a holder of a first or second security interest on a unit forecloses that security interest, the purchaser at the foreclosure sale is not liable for any unpaid assessments against that unit which became due before the sale, other than the assessments which are prior to that security interest under subsection (b) of this section. Any unpaid assessments not satisfied from the proceeds of sale become common expenses collectible from all the unit owners, including the purchaser."

makes no mention of tax lien foreclosures. Thus, there is nothing in the text of either § 12-181 or § 49-14 to suggest that a deficiency judgment is available in a tax lien foreclosure action. Furthermore, the plaintiff has provided us with no legislative history, and we are aware of none, to substantiate its claim that the legislature intended to permit deficiency judgments in tax lien foreclosure actions.

Moreover, when the legislature has intended to make available the remedy of a deficiency judgment in connection with the foreclosure of a lien, it has done so explicitly. For example, the legislature has provided that, with respect to judgment lien foreclosures, "[a] judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property." General Statutes § 52-380a (c). We observed in *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 643, that, as reflected in the plain language of § 52-380a (c), the legislature intended that "[e]very aspect of a mortgage foreclosure appl[y] equally to a foreclosure of a judgment lien, *including the right to a deficiency judgment pursuant to § 49-14 (a)*." (Emphasis added.) Id., 651. Using language similar in all material respects to that of § 52-380a (c), the legislature also expressly has provided for the availability of a deficiency judgment in condominium lien foreclosure actions. See General Statutes § 47-258 (j) ("[t]he association's lien may be foreclosed in like manner as a mortgage on real property"); see also *Linden Condominium Assn., Inc.* v. *McKenna*, supra, 247 Conn. 588. As evidenced by the unambiguous language of §§ 52-380a (c) and 47-258 (j), if the legislature had intended to make a deficiency judgment available in tax lien foreclosure actions, it easily could have done so. See, e.g., *State* v. *Rivera*, 250 Conn. 188, 199, 736 A.2d 790 (1999). Finally, under the statutory interpretation urged by the defendant, a plaintiff who forecloses on

a tax lien is not without a remedy to recover the balance of any taxes owed by a defendant: the plaintiff is free to commence a second action against the defendant for that purpose.[7]

The plaintiff claims that we should reject the defendant's interpretation of §§ 12-181 and 49-14 because considerations of efficiency militate against requiring the plaintiff to commence a second action solely to obtain a full recovery against the defendant. We acknowledge that judicial economy might be enhanced if the statutory scheme permitted a tax lienor to obtain a deficiency judgment in circumstances in which, as in this case, the judgment of strict foreclosure does not cover fully the amount of the debt owed to the municipality. In the absence of any indication that the legislature intended to provide tax lienors with the remedy of a deficiency judgment, however, we are not at liberty to engraft that remedy onto the statute. See, e.g., *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995) ("[w]e will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence of a compelling reason to do so"). Rather, "[w]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." (Internal

---

[7] We note that "[a]t common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt. . . . Thus, even if the value of the property that the mortgagee gained was less than the debt owed to her, the entry of judgment precluded any further common-law proceedings on the note. . . . Consequently, in 1833, the legislature created the remedy of the deficiency judgment in order to make the plaintiff whole when the value of the security did not cover the amount of the debt owed to the plaintiff." (Citations omitted; internal quotation marks omitted.) *Linden Condominium Assn., Inc.* v. *McKenna*, supra, 247 Conn. 587. In contrast, tax lienors, like judgment and condominium lienors, are not barred, under common law, from obtaining a judgment of strict foreclosure and, thereafter, commencing a separate action to recover the balance of any additional debt owed. Cf. General Statutes § 12-172 ("[n]o sale of real estate for taxes or foreclosure of any lien shall divest the estate sold of any existing lien for other taxes").

quotation marks omitted.) *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.*, 207 Conn. 639, 645, 541 A.2d 869 (1988). Thus, if § 12-181 should be in need of repair, it is for the legislature to repair and not this court.

The plaintiff further notes that we previously have acknowledged our public policy favoring such efficiency in concluding that a deficiency judgment is available in judgment lien foreclosure actions brought pursuant to § 52-380a (c); *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 220 Conn. 649–50; and condominium lien foreclosure actions brought pursuant to § 47-258 (j); *Linden Condominium Assn., Inc.* v. *McKenna*, supra, 247 Conn. 586. As we have explained, however, §§ 52-380a (c) and 47-258 (j) expressly incorporate the deficiency judgment provisions of § 49-14; our conclusions that deficiency judgments are available under those statutory subsections were predicated upon that clear legislative language. As the plaintiff must concede, there is no such link between §§ 12-181 and 49-14. Consequently, the plaintiff cannot prevail on its claim that our holdings in *Fairfield Plumbing & Heating Supply Corp.* and *Linden Condominium Assn., Inc.*, support the contention that a tax lienor, like a judgment or condominium lienor, is entitled to seek a deficiency judgment pursuant to § 49-14.

The judgment is affirmed.

In this opinion the other justices concurred.