MUNICIPAL FUNDING, LLC *v.* LOUIS GALULLO, TAX COLLECTOR OF THE CITY OF WATERBURY, ET AL.
(AC 21923)

Lavery, C. J., and Bishop and Peters, Js.

---

Argued May 2—officially released October 8, 2002

*Robert P. Hanahan*, for the appellant (plaintiff).

*Elaine M. Skoronski*, office of corporation counsel, for the appellees (defendants).

*Opinion*

LAVERY, C. J. This is an appeal from the trial court's judgment in a mandamus action arising from a dispute between the parties over the proceeds of a check issued pursuant to a fire insurance policy on property that sustained damage during the course of foreclosure proceedings. The plaintiff, Municipal Funding, LLC, appeals from the rendering of summary judgment in favor of the defendants, Louis Galullo, tax collector of the city of Waterbury, and the city of Waterbury. The court concluded that the plaintiff, which was an assignee of some of the city's municipal tax liens and had taken title by foreclosure, had no right to the proceeds of the check. On appeal, the plaintiff claims that the court improperly concluded that (1) the plaintiff could have obtained a deficiency judgment in its underlying tax lien foreclosure action, (2) the plaintiff as an assignee did not have the same rights to the insurance proceeds as the city would have had and (3) the plaintiff's foreclosures on two of the tax liens that it owned extinguished its right to payment on the third lien, even though the foreclosure did not extinguish the liens owned by another assignee and the city. We affirm in all substantive parts the trial court's well reasoned decision.

In determining a motion for summary judgment, the court may rely on "affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Practice Book § 17-45. That evidence reveals the following. This dispute arises from municipal tax liens and other taxes for property located at 300 Schraffts Drive in Waterbury, formerly known as the Red Bull Motor Inn. The city assigned liens against the property on the 1993, 1994 and 1995 grand lists to

GTL Investment Limited Partnership, which subsequently sold the liens to the plaintiff. The assignment to the plaintiff included an agreement between the plaintiff and the city providing that the plaintiff would not foreclose on the city's water and sewer liens, but would take the property subject to the liens and pay them off with interest. An entity called Angram was the assignee of the tax liens on the 1996 and 1997 grand lists, and the city retained rights to the real property taxes and tax liens on the 1998 and 1999 grand lists.

Following its acquisition of the liens from GTL Investment Limited Partnership, the plaintiff was substituted as a plaintiff in an action to foreclose the 1993 and 1994 tax liens. On January 19, 1999, a notice of judgment was issued, ordering strict foreclosure on the property. The foreclosure judgment stated that the property had a fair market value of $450,000, debt and attorney's fees totaling $169,666.03 and a title search fee and an appraiser's fee totaling $2300. The judgment thereafter was opened, and the law days were rescheduled to begin on May 25, 1999. On May 24, 1999, the premises were damaged by fire. The law days passed without redemption, and the plaintiff took title to the property on June 8, 1999.

On May 23, 2000, Seaco Insurance Company, the insurer of the former property owner, issued a check in the amount of $342,542.99 for partial payment for the damage caused by the fire. The check was payable to Reidville Scott Hospitality, LLC, Tancreti, Phipps, Hoffman & Biller, the city, the plaintiff and ROI Realty Credit, LLC.

On September 12, 2000, the plaintiff filed an application for an order of mandamus, asking that the court order that the tax collector endorse the check to the plaintiff as payment for its liens. The defendants denied that the tax collector was legally obligated to pay the

plaintiff and counterclaimed that the city had an interest in the insurance payment. In their counterclaim, the defendants asked that the parties be required to interplead together their claims to the distribution of the insurance proceeds and that the check be placed in escrow pending the outcome.

The parties thereafter filed cross motions for summary judgment. The plaintiff's motion for summary judgment as to liability argued that it was entitled to the insurance proceeds because the fire "occurred after the initiation of the tax foreclosure action, after the court set a fair market value for the property being foreclosed, after the court set a debt for taxes being foreclosed and which fire occurred before any law day for redemption was reached by any party to the foreclosure." The defendants' motion for summary judgment asserted that the plaintiff's debt for the tax liens was extinguished under common law, statutory foreclosure principles and the doctrine of merger.

On April 30, 2001, the court rendered summary judgment in the defendants' favor. In a thoughtful and well reasoned decision, the court concluded that all of the plaintiff's tax liens, including the 1995 lien, were extinguished when the plaintiff took title to the property. The plaintiff appealed to this court.

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must decide

whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Massad* v. *Eastern Connecticut Cable Television, Inc.*, 70 Conn. App. 635, 638, 801 A.2d 813, cert. denied, 261 Conn. 926, 806 A.2d 1060 (2002). We conclude that with the exception of dictum in the court's memorandum of decision that conflicts with *Winchester* v. *Northwest Associates*, 255 Conn. 379, 767 A.2d 687 (2001), which was released after the parties argued the summary judgment motions, the court's conclusions are legally and logically correct.

Focusing on the dictum first, the plaintiff argues that the court improperly concluded that it could have obtained a deficiency judgment in its underlying tax lien foreclosure action if the value of the property had decreased because of the fire. The plaintiff notes that in *Winchester* v. *Northwest Associates*, supra, 255 Conn. 389, our Supreme Court concluded that the statutory scheme does not allow municipalities to collect deficiency judgments in tax lien foreclosures. As the plaintiff conceded at oral argument, however, the trial court's observation was mere dictum, and we can affirm the court's judgment on other grounds.

We also are unpersuaded by the plaintiff's second two claims that (1) it is entitled to the insurance proceeds to satisfy the liens because the fire occurred before the law days, and (2) foreclosure on the 1993 and 1994 tax liens did not extinguish its right to payment on the 1995 lien.

The resolution of those final two claims requires us to interpret the statutes regarding municipal lien assignment and extinguishment, as well as the priority of municipal liens on fire insurance proceeds. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner,

the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 386. We afford plenary review to issues of statutory construction. Id.

General Statutes § 12-172 provides in relevant part: "The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest, as found in such list when finally completed, as such part may be increased by interest, fees and charges, and a lien for any obligation to make a payment in lieu of any such taxes . . . . Such lien . . . shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. . . ." General Statutes § 12-181 gives municipal tax collectors the authority to "bring suit for the foreclosure of tax liens in the name of the municipality by which the tax was laid . . . ."

Pursuant to General Statutes § 12-195h, a municipality is authorized to assign tax liens. Section 12-195h provides in relevant part: "The assignee or assignees of such liens shall have and possess the same powers and rights at law or in equity as such municipality and municipality's tax collector would have had if the lien had not been assigned with regard to the precedence and priority of such lien, the accrual of interest and the fees and expenses of collection. The assignee shall have the same rights to enforce such liens as any private party holding a lien on real property."

I

The plaintiff first argues that the court improperly made a distinction between a lien holding municipality's right to collect fire insurance proceeds and that of a lien holding municipal assignee. Where property damaged by fire is encumbered by a tax lien, a municipality may have priority to any fire insurance proceeds pursuant to General Statutes § 49-73a et seq. Section 49-73a provides in relevant part: "The interest of each person in the proceeds of any policy issued by an insurance company providing fire insurance coverage for loss or damages caused by fire on an item of real estate . . . provided the amount of the proceeds for the loss payable under such policy is five thousand dollars or more, shall be subject to any tax lien on such item of real estate . . . ." Furthermore, General Statutes § 49-73e provides in relevant part: "The liens filed pursuant to sections 49-73a and 49-73b shall take precedence over any claim of right of an insured owner, mortgagee, assignee or other interested party . . . ." Noting that § 12-195h provides that an assignee has the same rights as to the precedence and priority of the liens as a municipality, the plaintiff argues that the court impermissibly refused to apply § 49-73a, and further speculates that the court would have concluded that the city was entitled to the proceeds on the 1993, 1994 and 1995 liens if the city had been the party that was foreclosing. We disagree with the plaintiff's characterization of the court's decision and with its claim.

Underlying the claim is the flawed assertion that the timing of the fire before the first law day is a "critical fact." Assuming that the timing of the fire makes a difference, the plaintiff argues that the court ignored the relevant statutes and precedent from our Supreme Court.

We note, as did the trial court, that the critical fact is not whether the fire occurred before the first law

day, but that the plaintiff took title to the property. Just as the plaintiff stepped into the shoes of the municipality as an assignee for purposes of precedence and priority, it also is bound by the extinguishment provision of General Statutes § 12-195. That section provides in relevant part: "When any municipality acquires real estate by foreclosure . . . of a tax or an assessment lien or liens thereon . . . [t]he acquisition of such real estate by the municipality shall be deemed a cancellation by such municipality of all of its claims against the tax collector for unpaid taxes and assessments, interest or lien fees assessed against such real estate. . . ." Accordingly, by taking title to the property, the plaintiff lost its rights to collect on all of its liens, including its 1995 lien.

We note that there is no conflict between that interpretation of §§ 12-195 and 12-172. Section 12-172 further provides in relevant part that "[n]o *sale* of real estate for taxes or foreclosure of any lien shall divest the estate *sold* of any existing lien for other taxes." (Emphasis added.) We conclude that the plain language of § 12-172 and its relationship to other language in the statutory municipal foreclosure scheme indicates that this section applies only to real estate sales or foreclosure by sale. It does not apply to instances of strict foreclosure.

In addition to the plain language limiting § 12-172 to foreclosures by sale, we note that in 1998, the legislature amended § 12-195 to distinguish between strict foreclosures and foreclosures by sale or auction. See Public Acts 1998, No. 98-35, § 1. Speaking in favor of the amendment, which added the words "foreclosure by sale or auction" to the statute, Representative John S. Martinez stated that "this bill would allow municipalities to cancel unpaid taxes on parcels of land acquired by municipalities through foreclosure by sale or auction. Presently, the [statutory reference to 'foreclosure']

only allow[s] municipalities to cancel such taxes when a parcel is acquired through strict foreclosure." 41 H.R. Proc., Pt. 5, 1998 Sess., p. 1601. We conclude that the reverse also is true. Because § 12-172 refers only to sales of real estate for foreclosure of liens, we conclude that it does not apply to strict foreclosure. Accordingly, § 12-172 does not save the plaintiff's 1995 lien from extinguishment.

Arguing that this conclusion is contrary to precedent, the plaintiff cites *Burritt Mutual Savings Bank* v. *Transamerica Ins. Co.*, 180 Conn. 71, 428 A.2d 333 (1980), for the proposition that if fire damage occurs after foreclosure proceedings are initiated, the fire proceeds are needed to restore the property to its previous condition. As the trial court did, we conclude that *Burritt Mutual Savings Bank* is inapplicable. Whereas that case addressed an insurance company's liability under a mortgage loss payable clause; see id.; no such provision is present here. Furthermore, as the plaintiff conceded at oral argument, any equitable argument that it is entitled to the insurance proceeds because the property's "fair market value was diminished by the fire loss" founders for lack of evidence and the plaintiff's failure to seek to open the judgment before the close of the law days.

## II

The plaintiff's final claim is that if § 12-195 operates to extinguish its liens, then it extinguishes *all* municipal liens on the property, including those held by Angram and the city. As a result, it argues that the city has no interest in the insurance proceeds, presumably entitling the plaintiff to them in their entirety. Not only does that argument ignore the contract between the plaintiff and the city whereby the plaintiff agreed to pay the city's water and sewer liens with interest, but we also

disagree with the argument that the statutory scheme requires such a result.

As previously stated, § 12-195 provides in relevant part: "When any municipality acquires real estate by foreclosure . . . of a tax or an assessment lien or liens thereon . . . [t]he acquisition of such real estate by the municipality shall be deemed a cancellation by such municipality of all of its claims against the tax collector for unpaid taxes and assessments, interest or lien fees assessed against such real estate. . . ."

We disagree with the plaintiff's assertion that this section means that the plaintiff's foreclosure resulted in the extinguishment of not only the liens assigned to it, but also the liens retained by the city and Angram. By the plain language of the statute, it is the party who forecloses, and thus acquires the subject real property, whose liens then cease to exist. Although by virtue of § 12-195h, the plaintiff, as assignee, acquired the rights and powers of the city with respect to the enforcement of the 1993, 1994 and 1995 liens, it does not follow that it became the functional equivalent of the city for all purposes, particularly so as to trigger a broader application of the extinguishment provision of § 12-195. In that context, the relationship between the city, its other assignee and the plaintiff is analogous to that between different municipalities, such that the foreclosure of the plaintiff's liens did not "divest the estate . . . of any existing lien for other taxes." General Statutes § 12-172. Accordingly, we conclude that the court properly found that the liens held by Angram and the city were not extinguished by reason of the plaintiff's foreclosure and that the only liens that the plaintiff had any right to were the ones that it had purchased.

The judgment is affirmed.

In this opinion the other judges concurred.