[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
This action arises out of the plaintiff Evelyn Gur's employment with the defendant, Nemeth/Martin Personnel Consulting, Inc. (Nemeth/Martin). The two additional named defendants, John T. Martin and Patricia Nemeth, own and operate Nemeth/Martin. Gur was employed by Nemeth/Martin as a senior accounts manager from April 5, 1995 to November 4, 1996.
Gur alleges that, during the course of her employment, she was sexually harassed by being subjected to a hostile work environment. She further alleges that despite complaining to the defendants about the hostile work environment, they took to steps to alleviate the harassment. As a result, on October 16, 1996, the plaintiff filed a complaint, pursuant to General Statutes § 46a-82 (a),[1] with the Commission on Human Rights and Opportunities (CHRO) against Nemeth/Martin alleging that it discriminated against her in the terms and conditions of her employment on the basis of her gender in violation of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Thereafter, the plaintiff resigned from her position at Nemeth!Martin.
On December 31, 1996, Nemeth/Martin filed suit against Gur alleging that she had violated the terms of a non-compete provision contained in her written employment contract with Nemeth/Martin and violated the provisions of the Uniform Trade Secrets Act, General Statutes § 35-51
et seq. Gur filed a counterclaim alleging, inter alia, tortious interference with a business/contractual relationship. On April 13, CT Page 3890 2000, after trial, the court dismissed both the complaint and the counterclaim. See Nemeth-Martin Personnel Consulting, Inc. v. Gur,
Superior Court, judicial district of Danbury, Docket No. 326382 (April 13, 2000, Carroll, J.).
On January 15, 1997, while the action in the Superior Court was still pending, Gur filed a second complaint against Nemeth/Martin with the CHRO alleging that Nemeth/Martin retaliated against her for complaining about the alleged harassment and for filing the previous complaint with the CHRO. Pursuant to General Statutes § 46a-83, the CHRO investigated both of the plaintiff's complaints, including interviewing a number of witnesses under oath. On January 30, 1998, the CHRO entered an administrative dismissal of the plaintiff's CHRO complaints on the merits, finding that there was no reasonable cause to believe that discriminatory acts occurred. The plaintiff did not request reconsideration of the dismissal nor did she file an administrative appeal. Instead, on March 9, 1998, she commenced the instant action by way of a seven count complaint.
Subsequently, on September 21, 1998, the plaintiff filed a five count revised complaint against the defendants alleging the following causes of action: sexual harassment (count one); sex discrimination in violation of General Statutes §§ 46a-58 (a), 46a-60 (a)(1), and 46a-60 (a)(8) (count two); retaliation and constructive discharge in violation of § 46a-60 (a)(4) (count three); intentional infliction of emotional distress (count four); and tortious and reckless interference with contractual/business relations or expectancy (count five).
The defendants now move for summary judgment on each count of the plaintiff's revised complaint. As to counts one, two and three, the defendants move for summary judgment on the ground that the court lacks subject matter jurisdiction because the plaintiff has failed to exhaust her administrative remedies. As to count four, the defendants move for summary judgment on the ground that the plaintiff's claim for intentional infliction of emotional distress is legally and factually insufficient. As to count five, the defendants move for summary judgment on the ground that the plaintiff's claim is barred by the doctrines of res judicata and collateral estoppel. The plaintiff has filed an objection to the defendants' motion, and the matter was heard by the court on November 20, 2000.
 I SUMMARY JUDGMENT STANDARDS
"[S]ummary judgment shall be rendered forthwith if the pleadings, CT Page 3891 affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center,252 Conn. 363, 368 (2000).
 II DISCUSSION A Failure to Exhaust Administrative Remedies
The defendants move for summary judgment on counts one, two and three of the revised complaint on the ground that the court lacks subject matter jurisdiction because "the plaintiff has failed to exhausted her administrative remedies before the Commission or to appeal the Commission's decision to the Superior Court in accordance with the statutory requirements." (Defendants' Motion for Summary Judgment, ¶ 1.) The plaintiff responds that she has fully complied with all the jurisdictional prerequisites to suit in this court.
"The failure to exhaust administrative remedies implicates the subject matter jurisdiction of the court." Johnson v. Dept. of Public Health,48 Conn. App. 102, 108, 710 A.2d 176 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Figueroa v. C S Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845
(1996).
The defendants argue that because the plaintiff brought this action as an administrative appeal pursuant to General Statutes § 46a-94a[2]
and failed to comply with the statutory provisions of § 4-183 the court must dismiss the action. Specifically, the defendants argue that the plaintiff's failure to name the CHRO as a defendant in the appeal and to serve the CHRO with a copy of the appeal as required by § 4-183
deprives the court of subject matter jurisdiction.[3]
CT Page 3892
Although in her revised complaint the plaintiff cites § 46a-94a, it is apparent that the present action constitutes a separate action rather than an appeal from the decision from the CHRO. This is evinced by the following: (1) the plaintiff named two individuals as defendants who were not named as parties to the administrative proceeding, (2) the plaintiff did not name the CHRO in the present action, (3) the plaintiff did not plead the action as an administrative appeal, and (4) the plaintiff treats the action as a separate action in her objection to the defendants' motion for summary judgment. Therefore, this is a separate de novo action and, as such, the question is whether the plaintiff's action is properly before the court.
In Cannata v. Department of Environmental Protection, 215 Conn. 616,577 A.2d 1017 (1990), the Connecticut Supreme Court emphasized that "[i]t is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Citations omitted; internal quotation marks omitted.) Id., 622-23.
In applying the exhaustion doctrine to an employment discrimination case, the Supreme Court has stated that "the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO. It is the CHRO that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination. That the act does not provide an unconditional private right of action for claimants like the plaintiff is underscored by the terms of General Statutes § 46a-99, which expressly provides such a direct right of action when the allegedly discriminatory employer is a state agency. The plaintiff, having failed to follow the administrative route that the legislature has prescribed for his claim of discrimination, lacks the statutory authority to pursue that claim in the Superior Court." Sullivan v. Board of PoliceCommissioners, 196 Conn. 208, 216, 491 A.2d 1096 (1985).
The defendants argue that the plaintiff may not bring an independent action against them because she has not exhausted her available administrative remedies. Specifically, the defendants argue that the plaintiff has not obtained a release to sue from the CHRO pursuant to General Statutes § 46a-101, which is a jurisdictional prerequisite to suit. The plaintiff contends that she obtained the necessary release to CT Page 3893 sue from the CHRO, and even if she had not obtained a release, this would not be fatal to her claim because a release is not a jurisdictional prerequisite to suit. (Plaintiff's Memorandum, p. 14.)
Section 46a-100 provides, in relevant part: "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from thecommission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business. . . ." (Emphasis added.) The plaintiff argues that the "Notice of Final Agency Action" letter and the "Transmittal of Draft Summary of No Reasonable Cause" letter she received from the CHRO constitute a sufficient release pursuant to § 46a-83a. (Plaintiff's Memorandum, p. 13.)
The plaintiff's reliance on § 46a-83a is misplaced. Section 46a-83a
provides: "If a complaint is dismissed pursuant to subsection (b) of section 46a-83, or is dismissed for failure to accept full relief pursuant to subsection (c) of said section 46a-83, and the complainant does not request reconsideration of such a dismissal as provided in subsection (e) of said section 46a-83 the executive director of the commission shall issue a release and the complainant may, within ninety days of receipt of the release from the commission, bring an action in accordance with section 46a-100 and sections 46a-102 to 46a-104, inclusive." This section applies only to claims that are dismissed pursuant to § 46a-83 (b) and (c).[4] In the plaintiff's case, the CHRO conducted an investigation and rendered a final order pursuant to § 46a-83 (d),[5] and therefore, the right of action created by § 46a-83a is unavailable to the plaintiff. Accordingly, the plaintiff's only available avenue to the Superior Court, other than filing an administrative appeal pursuant to § 46a-94a, was to request a release to sue pursuant to § 46a-101.[6] There is no evidence that the plaintiff ever requested a release or received one, and her contention that the notice of the CHRO's adverse determination of her claim is a release is without merit.
Equally without merit is the plaintiff's argument that even if she had not obtained a release, this would not be fatal to her claim because a release is not a jurisdictional prerequisite to suit. The plaintiff cites no case nor can the court find any that supports the plaintiff's contention. In fact, the established law in Connecticut is that under the CFEPA a complainant must obtain a release to sue before bringing a private action in the Superior Court unless her action fits within one of the narrow exceptions to the exhaustion doctrine. See Fritz v.Guida-Fenton Opthalmology Associates, Superior Court, judicial district CT Page 3894 of New Haven at New Haven, Docket No. 398021 (September 18, 1997,Silbert, J.) (20 Conn.L.Rptr. 448); Block v. Connecticut Distributors,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 327673 (May 3, 1996, Levin, J.) (16 Conn.L.Rptr. 634).
The plaintiff also argues that because she is seeking compensatory damages for emotional distress, punitive damages and attorney's fees, she is excepted from exhausting the administrative remedies available to her prior to bringing a private action to the Superior Court. Specifically, the plaintiff argues that because the CHRO is not authorized to award the type of remedies she is seeking, it cannot provide her with an adequate remedy, and therefore, exhausting her administrative remedies would be futile.
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Citations omitted; internal quotation marks omitted.) Fish Unlimited v.Northeast Utilities Service Co., 254 Conn. 1, 12, 756 A.2d 262 (2000).
"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [The courts] have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed." (Citations omitted; internal quotation marks omitted.) Id., 13.
The plaintiff is correct insofar as she contends that the CHRO does not have authority to award damages for emotional distress or to award punitive damages and attorney's fees. See Bridgeport Hospital v.Commission on Human Rights Opportunities, 232 Conn. 91, 92-93,653 A.2d 782 (1995).
This court is aware of several thoughtful decisions which hold that a plaintiff seeking compensation for emotional distress, punitive damages and attorney's fees in connection with discrimination claims has exhausted administrative remedies, to the extent required by the exhaustion doctrine, when those claims have been brought to CHRO and denied before filing suit in Superior Court. See, e.g., Denning v.Admarket International, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343964, 22 Conn.L.Rptr. 440 (July 1, 1998, CT Page 3895Melville, J.); Fritz v. Guida-Fenton Opthalmology Associates, supra,20 Conn.L.Rptr. 448. These cases state that a plaintiff can bring a denovo lawsuit on the discrimination claims in Superior Court, i.e., not an administrative appeal pursuant to § 46a-94, if there are claims which the CHRO cannot address such as punitive damages and attorney's fees andif the plaintiff has given CHRO at least a chance to address the iscrimination claims. Under the rationale of these cases, the plaintiff Gur would e held to have exhausted her administrative remedies.
This court respectfully disagrees with the holdings of Denning andFritz. Although requiring a plaintiff to at least move through the CHRO administrative system before declaring that administrative remedies have been exhausted, these cases seem to ignore the statutory framework for discrimination claims and have the, perhaps unintended, effect of making the CHRO process culminating in the right of appeal pursuant to §46a-94 rather meaningless. This court holds that Gur, having invoked the procedures of CHRO and having not sought a release to sue de novo in Superior Court when she could have, is bound to seek her remedies and relief for her statutory discrimination claims pursuant to the administrative appeals procedure set forth in § 46a-94. To hold otherwise would allow persons to invoke the full administrative processes of CHRO as set forth in the CFEPA resulting in a complete merits review and determination of their statutory discrimination claims, blithely ignore the results of that process, and subsequently, initiate a de novo
judicial proceeding on the same claims. As in this case, that seriatim process would inevitably take several years or more and is not what the Connecticut legislature intended.
The CFEPA requires a complainant to commence an administrative proceeding. However, on at least two occasions, that statute permits a complainant to request a release from CHRO to allow initiation of a lawsuit in Superior Court: if CHRO denies the claim ministerially at the outset (§ 46a-83a) or if a determination on the merits has not been made in 210 days (§ 46a-101). See generally discussion supra pp. 8-11. Thus, the legislature has established an administrative process to determine claims brought under § 46a-60 but allowed claimants to bring those claims in court under two circumstances: (1) when CHRO did not give a full merits review, or (2) when the review process arguably took too long. However, the statutory framework provides that when no release has been given and CHRO has rendered a determination of the discrimination claims on the merits, then resort to the judicial process is limited to the administrative appeal process established under §46a-94. This administrative process seems to be rendered almost nugatory if courts read into it a right to relitigate from scratch the statutory discrimination claims in the Superior Court.
CT Page 3896
This analysis hardly results in unfairness to claimants. Thus, in Gur's case, she had the right to request a release to pursue her case in court because the CHRO evaluation of her claims extended far longer than 210 days. She did not make such a request. Furthermore, her claims of discrimination received a thorough evaluation and review. Gur alleged nine specific incidents in support of her claim of sexual harassment by being subjected to a hostile work environment and alleged she was retaliated against as a result of her complaints. CHRO investigated each of these incidents, interviewed numerous witnesses, and carefully applied the pertinent law. The investigation was summarized in an eleven, single-spaced, page report which concluded there was no reasonable cause to conclude that Gur had been discriminated against.
"It is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . and an administrative remedy, in order to be adequate, need not comport with the plaintiff's opinion of what a perfect remedy would be. (Citations omitted; internal quotation marks omitted.) Hunt v. Prior, 236 Conn. 421,434, 673 A.2d 514 (1996). "[S]ound policy dictates that the statutory remedial scheme be adhered to since we can presume that the legislature would have provided additional relief in the statute if it thought it necessary." (Citations omitted; internal quotation marks omitted.)Burnham v. Karl Gelb, P.C., 252 Conn. 153, 165, 745 A.2d 178 (2000). In most instances, the Supreme Court has held that "the failure to exhaust an administrative remedy is permissible only when the administrative remedy would be useless." (Internal quotation marks omitted.) Johnson v.Statewide Grievance Committee, 248 Conn. 87, 104, 726 A.2d 1154 (1999); see also Hunt v. Prior, supra, 236 Conn. 421 (administrative remedy that provided opportunity for reinstatement not futile because it was not authorized to grant relief for allegedly tortious breach of contract, including compensatory and punitive damages, attorney's fees and costs);Savoy Laundry, Inc. v. Stratford, 32 Conn. App. 636, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993) (administrative remedies available to plaintiff under statute not inadequate, despite fact that complaint sought relief, including punitive damages and attorney's fees, not available under statutory scheme, where essence of plaintiff's claim involved matter within authority vested in administrative agency).
For the above reasons, the court holds to exhaust her administrative remedies, Gur was obligated to seek judicial review pursuant to §46a-94. As discussed earlier, she has not done this, and therefore, the court does not have subject matter jurisdiction over the first three counts of the revised complaint, which are the statutory discrimination counts.
 B CT Page 3897 Intentional Infliction of Emotional Distress
The defendants move for summary judgment on count four of the revised complaint on the ground that the plaintiff's claim for intentional infliction of emotional distress is legally and factually insufficient. In support, the defendants argue that neither the allegations of the plaintiff's revised complaint nor the facts provided by affidavit reveal conduct by the defendants which is sufficiently extreme or outrageous to constitute the tort of intentional infliction of emotional distress.
In opposition, the plaintiff argues that the defendants' motion for summary judgment should be denied because "[t]here remain disputed issues of fact regarding the severity of the defendants' behavior, and the defendants are not entitled to judgment as a matter of law." (Plaintiff's Memorandum, p. 22.) Specifically, the plaintiff argues that as reasonable minds could differ as to whether the defendants' conduct was extreme or outrageous, her claim must be submitted to the jury.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059
(2000). "All four elements must be established to prevail on a claim for intentional infliction of emotional distress." Muniz v. Kravis,59 Conn. App. 704, 708-09, 757 A.2d 1207 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citation omitted; internal quotation marks omitted.) Appleton v. Boardof Education, supra, 254 Conn. 210.
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' . . . Conduct on the part of the CT Page 3898 defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Id., 210-11.
"A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain this action. The court looks to the specific facts and circumstances of each case in making its decisions." Craddock v.Church Community Supported Living Assn., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 592711 (November 13, 2000, Hennessey, J.).
In her revised complaint, the plaintiff alleges that she suffered emotional distress as a result of the defendants' extreme and outrageous conduct with respect to the following: (1) The use of double entendres, word play and jokes, conversations, gestures and teasing in a sexual context; (2) The use of the internet to view pornography during work hours and within open view of all workers; (3) On June 5, 1995, a graphic verbal reference was made to a homosexual act and a woman's sexual act; and (4) On October 8, 1996, a sexually explicit word was used in the plaintiff's presence. (Revised Complaint, ¶ 8.) The specifics of these allegations were flushed out in the "Finding of No Reasonable Cause and Summary" issued by the CHRO, which the plaintiff submitted in support of her objection to the defendants' motion. (Plaintiff's Exhibit 3.) The defendants state that they accept these factual allegation as true. (Defendants' Memorandum, p. 18.) The plaintiff also asserts that "[s]ubstantial testimonial evidence shows that the defendants . . . engaged in intentional extreme and outrageous behavior in an attempt to induce the plaintiff to leave her employment at Nemeth/Martin."[7]
(Plaintiff's Memorandum, p. 22.)
Viewing the facts in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the defendants' conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Board ofEducation, supra, 254 Conn. 210-11. While the conduct was clearly offensive to the plaintiff and certainly inappropriate under any circumstances, after considering the documentary evidence and affidavits submitted by the parties, the court concludes that the conduct complained of does not rise to the level required, as a matter of law, to establish the basis for the claim of intentional infliction of emotional distress. Accordingly, the defendants' motion for summary judgment is granted as to CT Page 3899 count four.
 C Res Judicata and Collateral Estoppel
The defendants move for summary judgment on count five of the revised complaint on the ground that the plaintiff's claim of "tortious and reckless interference with contractual/business relations or expectancy" is barred by the doctrines of res judicata and collateral estoppel. Specifically, the defendants argue that the claim raised by the plaintiff in count five is identical to a claim that was fully litigated inNemeth-Martin Personnel Consulting, Inc. v. Gur, supra, Superior Court, Docket No. 326382, a prior lawsuit between the parties. Although the plaintiff does not address the issues of res judicata and collateral estoppel in her objection to the defendants' motion for summary judgment, she does argue, in the context of the prior pending action doctrine, that her tortious and reckless interference with contractual/business relations claim in the present action is not identical to her counterclaim litigated in the prior lawsuit "because there is no identity of issues and parties" between the two actions. (Plaintiff's Memorandum, p. 21.)
"[S]ummary judgment is an appropriate vehicle for raising a claim of res judicata. . . ." (Citations omitted.) Joe's Pizza, Inc. v. Aetna Life Casualty Co., 236 Conn. 863, 867 n. 8, 675 A.2d 441 (1996). "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata." Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 712,627 A.2d 374 (1993).
"Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.)Virgo v. Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988). "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Internal quotation marks omitted.) State v. Ellis, 197 Conn. 436, 466,497 A.2d 974 (1985). The purposes of these doctrines are "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which would undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from CT Page 3900 being harassed by vexatious litigation." (Internal quotation marks omitted.) Id.
"[U]nder the doctrine of res judicata . . . a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim [or any claim based on the same operative facts that] might have been made . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding. . . ." (Brackets in original; emphasis omitted; internal quotation marks omitted.) LindenCondominium Assn., Inc. v. McKenna, 247 Conn. 575, 594, 726 A.2d 502
(1999). "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Delahunty v. MassachusettsMutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996).
"Collateral estoppel . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) Linden CondominiumAssn., Inc. v. McKenna, supra, 247 Conn. 596. "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Delahuntyv. Massachusetts Mutual Life Ins. Co., supra, 236 Conn. 600.
Connecticut courts "have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, [the court] compares the complaint in the second action with the pleadings and the judgment in the earlier action. . . ." (Brackets in original; internal quotation marks omitted.) Norse Systems, Inc. v.CT Page 3901Tingley Systems, Inc., 49 Conn. App. 582, 597-98, 715 A.2d 807 (1998).
In the prior action, Gur's counterclaim was based on a series of incidents alleged to have occurred on November 25, 1996. According to the counterclaim, she obtained an order to provide three consultants to a company. In order to find consultants, she contacted Contractors' Exchange, a broker, to refer to her qualified consultants. The principals of Contractors' Exchange, Mark and Myra Kirschenbaum, then advised Gur that John Martin of Nemeth/Martin had contacted them and pressured them not to do business with her. Martin also allegedly told the Kirschenbaums that Gur was in violation of her non-compete agreement with Nemeth/Martin, and had engaged in unethical business practices. Because of this pressure by Martin, Contractors' Exchange declined to do business with the plaintiff and as a result, she was unable to fill the order she had received. The plaintiff complained, inter alia, that Nemeth/Martin had tortiously interfered with her business/contractual relationship, defamed her character, and violated the Connecticut Unfair Trade Practices Act. Nemeth-Martin Personal Consulting, Inc. v. Gur, supra, Superior Court, Docket No. 326382.
The court entered judgment for Nemeth/Martin on all of the plaintiff's counterclaims, stating: "The Court can easily dispose of the issues asserted in the Defendant's (Gur) Counterclaim. The Defendant has offered no credible evidence of any type to support the allegations that have been made in the Defendant's Counterclaim nor has the defendant offered any credible argument or proposed findings of fact in her trial brief that would support any of the claims asserted in her Counterclaim." Id.
In the present action, the plaintiff claims in count five of her revised complaint that the defendants "tortiously interfered with her contractual/business relations or expectancy." The allegations in count five are virtually identical to the allegations in the plaintiff's counterclaim in the prior action with Nemeth/Martin. In count five, the plaintiff alleges that on November 25, 1996, the defendants: (1) interfered with her business by maliciously intimidating private contractors not to do business with her; (2) slandered and falsely accused her of breach of contract; (3) intentionally defamed her and her business' character; and (4) threatened Myra and Mark Kirschenbaum of Contractors' Exchange that if they continued to do business with the plaintiff, Nemeth/Martin would withdraw its business from them. (Revised Complaint, Count 5, ¶¶ 1-4.)
After comparing count five of the revised complaint in the present action with the pleadings and the judgment in the prior action, the court concludes that the plaintiff is advancing the very same claims in count five that were decided against her in the prior action with CT Page 3902 Nemeth/Martin. Because the plaintiff had an adequate opportunity to litigate these claims in conjunction with her prior action, the plaintiff is barred from relitigating them in the present action. This is true despite the fact that neither John Martin nor Pat Nemeth were parties to the counterclaim in the first lawsuit.
Res judicata protects not only parties to the original action, but those in privity with them. Joe's Pizza, Inc. v. Aetna Life CasualtyCo., 236 Conn. 863, 868, 675 A.2d 441 (1996). "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. . . . Although there is no bright line rule as to whether or not [corporate officers or] shareholders are in privity with their corporation for res judicata purposes . . . the Restatement (Second) of Judgments provides useful guidance." (Brackets in original; citations omitted; internal quotation marks omitted.) Id., 868-69.
"The Restatement (Second) of Judgments, § 59, sets forth the general rule that a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation [does not] have preclusive effects on the corporation itself. This rule of general applicability, however, is subject to an exception for corporations that are closely held: If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by . . . the holder of ownership in it is conclusive upon the [corporation] as to issues determined therein . . . except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation." (Internal quotation marks omitted.) Id., 869.
"When the corporation is closely held . . . interests of the corporation's management and stockholders and the corporation itself generally fully coincide. . . . For the purpose of affording opportunity for a day in court on issues contested in litigation . . . there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that [the interests of the shareholders and the closely held corporation itself] coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both." (Brackets in original; internal quotation marks omitted.) Joe's Pizza, Inc. v.Aetna Life Casualty Co., supra, 236 Conn. 869-70.
CT Page 3903
It is undisputed that Pat Nemeth and John Martin were the sole owners and shareholders of Nemeth/Martin and that they exercised complete control over the management and operation of the corporation. (Revised Complaint, Count 1.) In effect, therefore, the enterprise was a proprietorship or partnership conducted in corporate form. See 2 Restatement, supra. In such circumstances, the commonality of interest between Pat Nemeth and John Martin and Nemeth/Martin is sufficient to give rise to a presumption that Pat Nemeth and John Martin are in privity with Nemeth/Martin. The plaintiff has presented nothing to rebut this presumption. Therefore, the court concludes that the decision rendered inNemeth-Martin Personnel Consulting, Inc. v. Gur, supra, Superior Court, Docket No. 326382, is binding not only with respect to Nemeth/Martin, but to Pat Nemeth and John Martin, as well.
Accordingly, the defendants' motion for summary judgment as to count five is granted on the ground that the plaintiff's claims against the defendants are barred by the doctrine of res judicata. Because the court's conclusion with respect to the res judicata is dispositive, it is unnecessary for the court to consider the additional bases advanced by the defendants in support of their motion for summary judgment as to this count.
 III CONCLUSION
The defendants' motion for summary judgment is hereby granted as to all counts of the plaintiff's revised complaint.
Adams, J.